UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DANIEL VIVEIROS,<br><br>    Petitioner,<br><br>v.<br><br>MATTHEW DIVRIS, Superintendent,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)   Civil No. 23-10238-LTS<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS (DOC. NO. 1)

February 13, 2024

SOROKIN, J.

Daniel Viveiros, representing himself, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction and sentence by a Massachusetts state court, urging certain testimony was improperly admitted and alleging error arising from certain aspects of the trial prosecutor's closing argument. The respondent has opposed the petition.[1] Because each of Viveiros's claims either suffers from a procedural defect or is meritless, the petition is DENIED.

---

[1] Though Viveiros originally named the Commissioner of the Massachusetts Department of Correction as a second respondent, the appropriate respondent in a habeas proceeding such as this one "is the warden of the facility where the prisoner is being held, not . . . some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Here, that makes the only proper respondent Matthew Divris, the Superintendent of the North Central Correctional Institution in Gardner, Massachusetts, where Viveiros is presently incarcerated. To the extent Viveiros's petition is directed to Commissioner Carol Mici, it is DISMISSED.

I.      BACKGROUND

On July 18, 2019, following a jury trial in Bristol County Superior Court, Viveiros was convicted of "rape and abuse of a child under the age of sixteen, aggravated by more than a five-year age difference," along with a number of related charges.[2]  Viveiros, 175 N.E.3d 1241, at *1; see Doc. No. 1 at 1-2.[3]  The victim was Viveiros's step-daughter, who was between eight and ten years old at the time of the relevant events.  Doc. No. 17-5 at 42-43.

The charges arose after the victim reported to adult relatives in August 2016 that Viveiros had been sexually assaulting her regularly over the two-year period preceding her disclosure.[4]  She described the abuse has having started around the time Viveiros had moved in with her and her mother, who had begun dating Viveiros several months earlier.  According to the victim, the abuse happened almost daily, included a range of conduct, and continued after Viveiros married and fathered a child with the victim's mother.

At trial, the Commonwealth called seven witnesses.  The victim, by then thirteen years old, testified about what she had experienced, why she did not immediately report the abuse to her mother or any other adults, and the extent to which she did disclose it to a cousin with whom she was close.  Testimony by the victim's mother and her cousin (who was close in age to the victim) corroborated certain aspects of the victim's account.  A pair of expert witnesses gave general testimony illuminating patterns and factors related to when and how victims of sexual

---

[2] Before the trial, Viveiros "pleaded guilty to a related charge of violating an abuse prevention order," which stemmed from contact Viveiros had initiated with the victim's mother (who was his wife at the time) after the victim first reported Viveiros's abuse.  See Commonwealth v. Viveiros, 175 N.E.3d 1241, at *1 n.2 (Mass. App. Ct. 2021) (unpublished).

[3] Citations to "Doc. No. __ at __" refer to the document number and page numbering appended by ECF to items appearing on the Court's electronic docket.

[4] The Court has reviewed the entire trial record, Doc. Nos. 17-1 to 17-9, and summarizes the evidence here only to the extent the general context is helpful to understand the Court's analysis of Viveiros's claims.

assault commonly disclose their experiences, and whether and when physical signs of assault are likely to be observed during a medical examination.  Finally, two police officers testified briefly about seizing Viveiros's iPhone and searching its contents.  Viveiros called no witnesses.

The jury deliberated for approximately a day and a half before returning a verdict finding Viveiros guilty of all charged offenses.  Just over a week after the verdict, the trial judge sentenced Viveiros to an aggregate term of imprisonment of at least twenty-five years.  Doc. No. 17 at 18; see Doc. No. 17-9 at 27-28, 33.  Though Viveiros appealed the judgment, he filed no collateral, post-trial motions in state court.[5]  See Doc. No. 17 at 19-21.

On direct appeal, Viveiros raised three claims:  1) error by the trial court "in admitting, without expert opinion testimony, evidence" concerning the victim's "physical symptoms" that "promoted a speculative conclusion" about the cause of those symptoms; 2) a due process violation resulting from "the trial prosecutor grossly misstat[ing] the evidence, abus[ing] the first complaint rule and improperly vouch[ing] for" two witnesses in her closing argument; and 3) a due process violation resulting from "the cumulative effect" of the two alleged "trial errors," which "improperly bolstered" the victim's "credibility."[6]  Doc. No. 17 at 25.

The Massachusetts Appeals Court ("MAC") affirmed in an unpublished Memorandum and Order dated October 7, 2021.[7]  On the first claim, the MAC found no error by the trial court in allowing the victim's mother to testify that the victim had stomachaches during the time Viveiros lived with them, and concluded that the admission of similar testimony about bladder

---

[5] Viveiros was represented by a lawyer at trial, and he was represented by new counsel throughout his direct appeal in state court.  See Doc. No. 1 at 13.

[6] In this list, and elsewhere in this Order where the Court quotes phrases that appear in all capital letters in the record, the excerpts are adjusted to eliminate the all-caps font for ease of reading.

[7] A copy of the MAC's decision is included in the respondent's Supplemental Answer.  Doc. No. 17 at 243-45.

issues, though erroneous, was not prejudicial.  Viveiros, 175 N.E.3d 1241, at *2.  As to the second claim, the MAC found the prosecutor had not abused the first-complaint rule in her closing, and that there was no substantial risk of a miscarriage of justice flowing from the other statements about which Viveiros complained—to which he had not objected at trial.  Id. at *2-3.  The MAC concluded by noting in the margin that its "disposition"—which found only non-prejudicial error that was fleeting and did not "go to the heart of the case"—eliminated the need to separately evaluate Viveiros's claim of cumulative error.  Id. at *3 & n.4.  Both the Supreme Judicial Court ("SJC") and the United States Supreme Court denied review.  Doc. No. 17 at 278; Viveiros v. Massachusetts, No. 21-7312, 142 S. Ct. 2685 (2022) (mem.).

In his timely federal habeas petition, Viveiros presents a trio of challenges that echo those he presented to the MAC on direct review.  Compare Doc. No. 1 at 17-21 (articulating grounds for habeas relief), with id. at 16 (using nearly identical language to describe the issues raised on direct review), and Doc. No. 17 at 25 (same).  The petition is now fully briefed and ripe for resolution.

II.     LEGAL STANDARDS

A federal district court may not grant a writ of habeas corpus unless it finds that the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As the Supreme Court has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof.  Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S.

4

170, 181 (2011); see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems); Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015) (noting "error by a state court, without more, is not enough to warrant federal habeas relief" under the "peculiarly deferential standards" of § 2254).

The standards governing a habeas court's evaluation of a state court's factfinding are likewise daunting. Even if "[r]easonable minds reviewing the record might disagree" about a challenged factual determination, "on habeas review that does not suffice to supersede the [state] court's . . . determination." Rice v. Collins, 546 U.S. 333, 341-42 (2006); accord Porter v. Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022); see also Wood v. Allen, 558 U.S. 290, 301-02 (2010) (explaining that if "evidence in the state-court record can fairly be read to support the [state] court's factual determination," habeas relief is not warranted); cf. Gaskins v. Duval, 640 F.3d 443, 452 (1st Cir. 2011) (noting presumption of correctness "applies to determinations made by both state trial and appellate courts"). In general, a petitioner does not establish entitlement to habeas relief "by employing the same [evidence] already considered by the state court" and asking the federal court to weigh or credit it differently. Teti v. Bender, 507 F.3d 50, 59 (1st Cir. 2007).

A federal habeas court will not even reach the point of assessing a petitioner's ability to meet these standards if certain procedural prerequisites to habeas review are not satisfied. At the outset, a federal habeas court generally cannot reexamine a state court's application of state law, even if that application was erroneous. See Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005). Assuming the petitioner asserts a violation of federal (rather than state) law, he must first

5

exhaust the claim by fairly presenting its federal dimensions through all available levels of state-court review.  28 U.S.C. § 2254(b); see Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerkel, 526 U.S. 838, 839, 848 (1999); Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).  Failure to exhaust federal claims in state court risks procedural default of those claims for habeas purposes.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Procedural default also arises if a state court refuses to address a federal claim on its merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).  This bar to federal habeas review applies even if the underlying federal claim asserted error of constitutional magnitude.  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  Massachusetts courts routinely and consistently enforce procedural rules requiring criminal defendants to lodge contemporaneous objections, including to alleged violations of their constitutional rights.  See Mass. R. Crim. P. 22; Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); see also Janosky, 594 F.3d at 44.  Although Massachusetts appellate courts sometimes review claims for "miscarriage of justice" despite a failure to adhere to these requirements, such discretionary and limited review "does not in itself indicate that the court has determined to waive" the relevant rules and consider the underlying claim on its merits.  Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); accord Janosky, 594 F.3d at 44.

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44.  To

demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded" the petitioner's ability "to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. To show "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994). If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence" via "new reliable evidence" that would have caused any "reasonable juror" to acquit. House v. Bell, 547 U.S. 518, 538 (2006); see Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46.

Measured against these rigorous standards, Viveiros's challenges fail.

III.   DISCUSSION

   A.   Testimony About the Victim's Physical Condition

Viveiros first challenges the admission at his trial of testimony by the victim's mother, unaccompanied by an expert opinion, describing physical symptoms the victim exhibited during the relevant two-year period. Doc. No. 1 at 17; Doc. No. 8 at 7. He characterizes the MAC's disposition of this claim as "objectively unreasonable and contrary to clearly established federal law." Doc. No. 1 at 17. This challenge fails for two reasons, each of which is independently sufficient to prevent Viveiros from obtaining habeas relief via his first claim.

The first barrier to this claim's success is procedural. A careful review of the state-court record reveals that, though he pursued a version of this challenge throughout his direct appeal, Viveiros never alluded to a federal dimension to his "garden-variety claim of evidentiary error," let alone presented such a "federal claim to the state court face-up and squarely." Coningford,

640 F.3d at 483 (quotation marks omitted).  Nowhere in the arguments he advanced to the MAC and the SJC in support of his first claim on direct review did Viveiros invoke the United States Constitution, rely on any other federal law, or cite any decision of any federal court construing or applying federal law.  See Doc. No. 17 at 39-43, 231-36, 257-64 (relying entirely on state law governing proper scope of lay and expert testimony in opening and reply briefs to MAC and in application to SJC for further review).[8]  Viveiros's failure to "alert[]" the state courts "to the federal nature of" his evidentiary challenge to the victim's mother's testimony means he has not properly exhausted such a claim.  Baldwin, 541 U.S. at 29.  That "is, in itself, sufficient to defeat" his first habeas claim.  Coningford, 640 F.3d at 483.

Were the Court inclined to look past Viveiros's failure to exhaust a federal version of his first claim, it would run headlong into a second barrier—the claim fails on its merits, as well.  See id. (allowing federal court "to dispose of [an unexhausted] claim once and for all" if it "is patently without merit").  The MAC addressed the state-law-focused version of this claim presented to it on direct review, summarizing the relevant background as follows:

> On direct examination of the victim's mother, the prosecutor elicited testimony that the victim suffered from frequent stomachaches and "bladder issues" from April 2014 to August 2016, which was the period during which [Viveiros] lived with [them].  The mother testified that the victim frequently experienced stomach pain and a burning sensation and discomfort with her bladder that would "accompany the stomachaches."  The mother also testified that, despite numerous visits to the victim's pediatrician, no one was able to diagnose the cause of the victim's discomfort.  The victim was eventually referred to a hospital to see a stomach doctor, who prescribed a stool softener.  Nevertheless, the victim's symptoms continued.  At this point, the prosecutor asked whether the victim's symptoms eventually subsided, and defense counsel objected on the ground that, without expert testimony, the Commonwealth should not be permitted to introduce testimony suggesting that the victim's stomachaches and bladder issues were physical manifestations of anxiety, or to suggest that those symptoms subsided once

---

[8] By contrast, Viveiros did expressly invoke federal due process protections in support of his second and third claims in his submissions to the state appellate courts.  See Doc. No. 17 at 44, 48, 54, 257.

>[Viveiros] left the home.  The judge permitted the prosecutor to ask the victim's mother when, in her memory, the victim's physical ailments subsided.  The mother then testified that the victim's stomachaches stopped in August of 2016, which was when [Viveiros] left the home.  The mother said nothing about the bladder issues.

Viveiros, 175 N.E.3d 1241, at *1.

After laying out the principles of state law governing its evaluation of Viveiros's claim that allowing the testimony described above, "without any expert opinion testimony as to the possible causes of [the victim's] symptoms," was "reversible error," id. at *1-2, the MAC offered the following explanation of its rejection of the claim:

>We accept the proposition that it is within the common knowledge and experience of lay jurors that children may exhibit stomachaches as a result of anxiety or distress.  But the victim's "bladder issues," which included burning and discomfort, stand on different footing because the jury would not have been able to draw a causal connection between the alleged abuse by [Viveiros] and the victim's bladder issues without engaging in speculation or conjecture.  Thus, the mother's testimony regarding bladder issues should not have been admitted.
>
>We thus ask whether [Viveiros] was prejudiced by the error.  In making this determination, we examine factors such as the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; and the weight or quantum of evidence of guilt.  Here, apart from the single reference during the mother's direct examination, the victim's bladder problems were not again mentioned, either in questioning, testimony, or closing arguments.  The Commonwealth's evidence was strong, and the victim's testimony was corroborated in various aspects, including by the first complaint witness, by the mother, and by text messages from [Viveiros].  In the circumstances, we are confident that this erroneously admitted evidence did not influence the jury, or had but very slight effect.

Id. at *2 (cleaned up).

The MAC's reasoning was neither contrary to, nor an unreasonable application of, clearly established federal law.  Viveiros has not identified any Supreme Court decision directly addressing the evidentiary challenge he advances, nor is the Court aware of one.  This "leaves hanging by the slimmest of threads" his first federal claim (if that claim is construed as an assertion that his right to due process was violated by the admission of this relatively limited

9

testimony).  Coningford, 640 F.3d at 484-85.  "Because the Supreme Court has not laid down a governing rule" applicable to the specific challenge at issue here, "the broader fair-trial principle is the beacon by which [the Court] must steer." Id. at 485.  To obtain habeas relief, then, Viveiros would have to persuade the Court that the MAC's analysis was "so arbitrary or capricious" in the circumstances presented that it fell outside "the universe of plausible evidentiary rulings." Id.  This he has not done.

It was neither arbitrary nor capricious for the MAC to "accept" that jurors are capable of understanding, without expert insight, the link many human beings—both children and adults—experience between stress and anxiety on the one hand and stomach discomfort on the other.  That connection is, as the MAC sensibly found, comfortably "within the common knowledge and experience" of laypeople.  The MAC's rejection of this portion of Viveiros's first claim was entirely reasonable (as was the trial judge's ruling permitting testimony about the victim's stomachaches in the first place) and, therefore, provides no avenue to habeas relief.

As far as bladder issues are concerned, the MAC thoughtfully distinguished that portion of the challenged testimony from the description of stomachaches, and appropriately found evidence on this specific symptom was admitted in error.  In the context of the entire trial record, however, the MAC reasonably determined that this error was not prejudicial.  The exchange in which the victim's mother described the physical symptoms at issue here covers approximately two pages of the trial transcript, interrupted by a three-page sidebar exchange about the defense objection to this testimony.[9]  See Doc. No. 17-5 at 238-43.  That the victim's stomachaches were

---

[9] The trial transcript, excluding jury selection, spans well over five hundred pages.  The testimony Viveiros challenges is a relatively short exchange between the victim's mother and the prosecutor:

    Q    Now, you mentioned that [the victim] woke up because her stomach hurt, was that –

10

sometimes accompanied by bladder discomfort was the subject of approximately five lines of the mother's transcribed testimony—a fraction of the relevant exchange, which is itself a fraction of the trial record. As the MAC noted, no lawyer returned to this issue again in later examination of this witness or any other, nor was it mentioned in either lawyer's closing argument. Even

---

| | | |
|---|---|---|
| A | A lot, yeah. | |
| Q | That occurred frequently? | |
| A | Yes. | |
| Q | So from roughly April of 2024 or so did [the victim] have these stomachaches? | |
| A | From 2014 or so? Yes. | |
| Q | And what, if anything, did you do about the stomach issues that she complained of? | |
| A | Depending on what the issue was, I would go to the walk-in. She did complain of bladder issues. I had taken her to her regular pediatrician multiple times. | |
| Q | When you say bladder issues, what do you mean? | |

[Defense objection made, overruled.]

| | |
|---|---|
| A | Okay. With the bladder issues she would complain of burning, just discomfort, can't sit still, which would also accompany the stomachaches. |
| Q | Okay. |
| A. | So after a number of times going to the pediatrician and them not being able to diagnos[e] her with anything, they suggested that she go to Hasbro to see the specialist there, the stomach doctor. |
| Q | Okay. Did you take her there? |
| A | Absolutely, yeah. And they had prescribed her a stool softener. I don't remember the name of it. But we tried that and she still had the stomach issues. |
| Q | Okay. Did [the victim's] stomach issues eventually resolve, get better? |
| A | Yeah. After, I mean. |

[Defense objection, with sidebar conference, at the conclusion of which the trial court allowed one further question.]

| | |
|---|---|
| Q | To the extent that you are able, and if you are able to give a date, roughly, approximately when you became aware that [the victim's] stomachaches stopped? |
| A | I want to say they stopped, um, the end of August 2016. |

Doc. No. 17-5 at 238-43; see also id. at 236 (reflecting that the first, and only other, reference by the victim's mother to stomachaches was in the description of a time when she woke up during the night and found Viveiros in the victim's bedroom, which Viveiros explained by claiming the victim had awoken crying and "said she had a stomachache so [Viveiros] put her back to sleep").

11

without assessing the strength of the other evidence of Viveiros's guilt, there simply is no basis to believe the fleeting reference to this one symptom rendered the entire trial unfair in a constitutional sense.[10]  Thus, the erroneously admitted but extremely limited evidence about the victim's bladder discomfort does not entitle Viveiros to habeas relief.

In sum, Viveiros's first claim is doomed twice over.  It is not exhausted, because he did not fairly present it to the state courts in terms of federal law.  And, the MAC's disposition of the claim he did present was nowhere near the sort of "extreme malfunction" of a state criminal justice system that triggers entitlement to federal habeas relief.  See Titlow, 571 U.S. at 20.

B.     The Prosecutor's Closing Argument

Next, Viveiros presses three challenges to comments the prosecutor included in her closing argument.  In particular, he argues here, as he did on direct appeal, that his due process rights were infringed when "the prosecutor erred in her closing argument by (1) violating the first complaint doctrine by mentioning multiple conversations between the [victim] and the first complaint witness, (2) misstating the evidence, and (3) improperly bolstering the victim's credibility."  Viveiros, 175 N.E.3d 1241, at *2; accord Doc. No. 8 at 20; see also id. at 22

---

[10] The MAC's finding that the evidence of Viveiros's guilt was sufficiently strong to counteract any possibility of prejudice flowing from this testimony also was reasonable.  The victim detailed the abuse she suffered, acknowledging and providing context for various discrepancies between the account she provided at trial and earlier statements she gave during the course of the investigation that followed her disclosure.  Parts of her testimony were corroborated by her cousin (who also acknowledged and explained discrepancies in her own prior descriptions of what the victim told her and when), her mother (through firsthand observations made during the relevant time period, such as requests by the victim to visit other family members rather than be left home alone with Viveiros), and Viveiros's own text messages to his wife (using the same euphemism for sex that the victim described him using in conversations with her).  Though a factfinder would not have been obligated to convict Viveiros on the basis of this evidence, it was reasonable and plausible for the MAC to view the Commonwealth's evidence as "strong," and to conclude that the limited testimony about the victim's bladder discomfort would have had little-to-no impact on the jury's decision in the context of the record as a whole.

(quoting the portion of the closing argument in which Viveiros alleges error).  As the Court will explain, the first of these challenges is meritless (because the MAC reasonably evaluated and rejected it without ignoring or diverging from any clearly established federal law), and the other two are procedurally defaulted (because Viveiros lodged no contemporaneous objections to those aspects of the closing argument).

The MAC briefly described Massachusetts's "first complaint" doctrine, then provided the following explanation of its reasons for rejecting Viveiros's first challenge to the prosecutor's closing argument:

> Where a complainant makes successive complaints to the first complaint witness, ordinarily only the details of the initial complaint are admissible.  However, the defendant can open the door to evidence about successive complaints.  That is what happened here when defense counsel cross-examined the victim about her complaints to the first complaint witness, and then referred to successive complaints in his closing argument to suggest that the victim and the first complaint witness had colluded to fabricate a story about [Viveiros's] conduct.  It was not error, therefore, for the prosecutor to also refer to the fact of successive complaints in order to counter the suggestion of collusion.

Viveiros, 175 N.E.3d 1241, at *2-3 (cleaned up).[11]  This decision was neither contrary to nor an unreasonable application of any clearly established federal law.  Cf. Dagley v. Russo, 540 F.3d 8, 15 n.3 (1st Cir. 2008) (noting absence of a "precise federal standard governing due process claims based on a prosecutor's remarks" and describing standard applied by Massachusetts courts to measure whether improper comments are harmful as "functionally equivalent" to the standards applied by federal courts).

---

[11] Though the MAC cited only state-court decisions, the Court presumes it also considered and rejected the associated federal constitutional claim Viveiros included in his direct appeal papers.  The standards of habeas review call for such a presumption in these circumstances and require the Court to afford deference to the MAC's decision, just as it would to any other state-court decision addressing the merits of a federal claim.  See Richter, 562 U.S. at 99-100.

13

To the extent Viveiros believes the state courts misapplied the standards governing admission of first complaint testimony in Massachusetts, that question arises under state law. It does not present a claim that is properly subject to habeas review—regardless of whether the state courts erred in administering the boundaries state law imposes on such evidence. See Rodriguez, 412 F.3d at 37. And, to the extent Viveiros argues he was denied due process as a result of the prosecutor commenting in closing on the likelihood that the victim and her close cousin (the first complaint witness) had more than one conversation about Viveiros's abuse, he has not established an entitlement to habeas relief on this basis. The primary thrust of Viveiros's defense at trial was a vigorous attack on the victim's credibility. That theme was announced during the defense opening statement, pursued during witness cross-examinations (and, most especially, during the cross-examinations of the victim and the first complaint witness), and emphasized in the defense closing argument (which occurred before the prosecutor's closing in which the challenged remarks were made). One way Viveiros developed that theme was to compare and contrast what the victim and the first complaint witness said when making different disclosures and statements about the relevant events. Indeed, in his closing argument, defense counsel expressly urged the jury to find that the victim and the first complaint witness had conspired to craft a uniform, false account of Viveiros's abuse of the victim. E.g., Doc. No. 17-7 at 32-33 (arguing the "only way" for "these two young girls" to "have said the same thing" to investigators and during trial "is through collusion," and expressing "no doubt" that "they talked about this . . . and got their stories straight").

In this context, it was altogether reasonable of the MAC to find that, notwithstanding the limits normally applicable to first complaint evidence, the defense "opened the door" to at least some evidence and argument concerning additional conversations between the victim and the

14

first complaint witness. The remarks the prosecutor made on this subject in her closing were supported by unambiguous witness testimony (to which Viveiros had <u>not</u> objected at the time). E.g., Doc. No. 17-5 at 188, 201 (reflecting the first complaint witness responded to certain questions by specifying what was not included "in that first conversation" and acknowledged she had "more than one conversation" with the victim "about this"). Moreover, they did not constitute the bulk or the primary focus of the closing as a whole, and they were reasonably understood as a response to the defense. <u>See, e.g.</u>, Doc. No. 17-7 at 42-44 (reflecting prosecutor referenced "multiple conversations" in portion of her closing responding to defense comments on the close relationship between the cousins and addressing confusion the first complaint witness expressed about certain issues during her cross-examination by defense counsel).

Viveiros has identified no clearly established federal law calling into question the MAC's finding that, in these circumstances, the prosecutor's reference to "multiple conversations" between the victim and her cousin was not error at all, let alone the type of error that could have undermined the fairness of the entire trial. To the extent his second habeas claim rests on this remark, then, it is meritless.

The remainder of Viveiros's second claim is hopeless by virtue of his failure to adhere to well-established and routinely enforced procedural rules that govern Massachusetts criminal trials. As the MAC explained, the two other "claims of error" included in Viveiros's challenge to the prosecutor's closing argument "are based on . . . a rhetorical question" posed by the prosecutor that invited jurors to infer that the victim had revealed "rape" by Viveiros in a conversation with her cousin other than the first complaint disclosure that was the focus of the cousin's testimony. <u>Viveiros</u>, 175 N.E.3d 1241, at *3. The MAC noted Viveiros had "not object[ed] to the challenged statement at trial," and it therefore reviewed his "claim of error only

for a substantial risk of a miscarriage of justice" (and it found none).  Id.  Under the legal standards set forth above, this means the two challenges to the same rhetorical question that are included in Viveiros's habeas petition are procedurally defaulted.  See Janosky, 594 F.3d at 44; Tart, 949 F.2d at 496.

Nothing before the Court establishes or even suggests that Viveiros's ability to lodge a contemporaneous objection to this aspect of the closing was in any way "impeded" by an "objective factor external to the defense."  Carrier, 477 U.S. at 488.  To the contrary, the record establishes Viveiros was represented by a lawyer who leveled numerous objections to the Commonwealth's evidence, via pretrial motions and at trial, and Viveiros has never sought to challenge the effectiveness of his trial counsel.  Just as he has not shown cause for his default, Viveiros has altogether failed to show that the prosecutor's closing argument "worked to his actual and substantial disadvantage," Frady, 456 U.S. at 168, and he has neither claimed nor demonstrated "actual innocence," House, 547 U.S. at 538.[12]

Accordingly, Viveiros cannot escape the effect of his default insofar as the second and third grounds for his due process challenge to the prosecutor's closing argument are concerned.  That, combined with the failure on the merits of the non-defaulted portion of the challenge, warrants denial of his second habeas claim.

    C.    <u>Cumulative Error</u>

Viveiros's third and final claim merits only brief comment.  The MAC rebuffed it summarily, "[i]n light of [its] disposition" of the two standalone claims.  Viveiros, 175 N.E.3d

---

[12] For reasons noted previously, see note 10, supra, the Court's review of the record has uncovered no reason to second-guess the MAC's finding that there is no risk in this case that the jury's verdict was influenced by the transitory remark that is the focus of the defaulted portion of Viveiros's second claim.

1241, at *3 n.4.  This altogether sensible conclusion—which the Court understands as a consideration and rejection of the claim on its merits notwithstanding its brevity, see Johnson v. Williams, 568 U.S. 289, 293 (2013)—is neither contrary to nor an unreasonable application of any clearly established federal law.

For the same reasons the MAC was "left with no uncertainty that the defendant's guilt ha[d] been fairly adjudicated," Viveiros, 175 N.E.3d 1241, at *3, and the same reasons this Court found no grounds to excuse Viveiros's procedural default, § III(B), supra, there is simply no basis for finding that the insubstantial errors noted by the MAC could have combined to infect Viveiros's trial with error of constitutional magnitude.  Viveiros has not advanced any serious argument, grounded in the record and supported by federal law, otherwise.  Instead, he rests his final claim on a belief that his "trial was rife with errors" that "repeatedly bolstered [the victim's] credibility," and he relies almost entirely on the same state-court precedent the MAC found unpersuasive.  Doc. No. 8 at 34.  Compare id. at 34-35 (containing Viveiros's five-paragraph argument in support of his third habeas claim), with Doc. No. 17 at 54-56 (showing Viveiros supported his third claim on direct appeal with an argument virtually identical to the first four paragraphs of his argument to this Court).

Because Viveiros has not demonstrated any error of significance when considered in the context of his entire trial, he has not come close to establishing entitlement to federal habeas relief based on the MAC's disposition of his cumulative-error claim.  His final federal claim, therefore, is meritless.

IV.     CONCLUSION

Because each of Viveiros's claims fails on procedural or substantive grounds—or both—his federal habeas petition (Doc. No. 1) is DENIED.[13]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[13] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained above, Viveiros cannot overcome his failure to exhaust his first claim or his procedural default of portions of his second claim. And, he has not shown that the MAC's rejection of his first claim, the non-defaulted portion of his second claim, or his cumulative-error claim were contrary to or an unreasonable application of federal law.